UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

TERESA CURRIA,
Plaintiff

v. C.A. No. 06-266 ML

BLUE CROSS BLUE SHIELD OF RHODE ISLAND;
MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY;
MASSMUTUAL BENEFITS MANAGEMENT, INC.; &
MASSMUTUAL FINANCIAL GROUP
Defendants

**PLAINTIFF'S OBJECTION AND OPPOSITION TO DEFENDANTS', MASSMUTUAL BENEFITS MANAGEMENT, INC., MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, AND MASSMUTUAL FINANCIAL GROUP, MOTION TO DISMISS WITH SUPPORTING MEMORANDUM**

The Plaintiff Teresa Curria (hereinafter "Curria" or "Plaintiff") submits this Objection and Opposition to Defendant MassMutual Benefits Management, Inc. *et al* (hereinafter collectively "MassMutual" or "Defendant") Motion to Dismiss all counts of the Verified Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, with her Supporting Memorandum of Law. Plaintiff's Verified Complaint alleges, *inter alia*, that the Defendant breached its fiduciary duty towards the Plaintiff under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC §1001 et seq., in addition to certain state law claims of breach of contract and misrepresentation. No exchange of discovery or mandatory disclosures has occurred, and no Rule 16 conference has taken place.

**<u>FACTS</u>**

Plaintiff's Complaint sets out the essential allegations pertinent to her claims. Plaintiff was employed by the Defendant for approximately 32 years. (Complaint, Para. 8.) The Defendant maintains and administers an Employee Benefit Plan, entitled Blue

Cross & Blue Shield of Rhode Island Retirement Plan, providing certain retirement and pension benefits to its employees, including Plaintiff. (Id, 9.) BCBSRI maintains a contract with MassMutual, to perform certain administrative functions pertinent to the plan, along with BCBSRI authorities, with certain fiduciary responsibilities. (Id, 10.) (Ex. 2—excerpt from the BCBSRI Retirement Plan, Summary Plan Description, effective January 1, 2003.)

During or about the spring of 2003, Plaintiff was informed by BCBSRI, in the form of a letter from Chief Operating Officer, James E. Purcell, that her job duties were being transitioned to another company, Perot Systems Corporation. (Id, 11.) As a result of the transition of certain functions to Perot Systems, the Plaintiff and certain other employees suffered a diminution in retirement benefits, paid health insurance benefits, and life insurance benefits. (Id, 12.)

Plaintiff voiced concerns to appropriate BCBSRI authorities. (Id, 14.) However, no effective responsive action resulted. (Id, 15-16.) In order for the Plaintiff to obtain employment with Perot Systems, she was required to sign a General Release, entailing a waiver of *any* claims she might have against the Defendant, among other provisions. (Id, 17.) Prior to signing this Release, the Plaintiff was assured by BCBSRI authorities that the retirement plan would be applied fairly and legally according to the terms of the plan. (Id, 19.) Plaintiff alleges that she was told that the plan could not be changed to serve the advantage of any particular group, and would be enforced as written. (Id, 19.) Plaintiff relied on the material assurances of the Defendant authorities that the terms of the plan regarding retirement benefits and continued health and life insurance would be applied uniformly and fairly, consistent with the terms of the existing plan(s). (Id, 20.)

Plaintiff signed the pertinent release and began employment with Perot Systems on June 3, 2003. (Id, 21-22.) Following her transition to Perot Systems, information came to Plaintiff's attention indicating that certain employees with 25 or more years of service were being accorded special treatment, in certain instances, relative to retirement, healthcare benefits and life insurance benefits, treatment denied her, despite her 32 years of service. (Id, 24-26.) Based on Plaintiff's information and belief, certain employees were accorded special treatment, denied the Plaintiff, in that they were not held to the requirement noted in the applicable plan(s) that an employee must be "in the active employ of the company at the time [he/she would] qualify for the benefits under either the National Long Term Disability Program or the Blue Cross & Blue Shield of Rhode Island retirement plan and have been hired prior to January 1, 1992. (Id, 26.)

**STANDARD OF REVIEW**

In ruling on a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must determine whether the Complainant states any claim upon which relief can be granted. See ***Greene v. Rhode Island***, 289 F. Supp. 2d 5,8 (D.R.I. 2003). In fact, "the sole function of a motion to dismiss is to test the sufficiency of the complaint." ***Rhode Island Affiliate, ACLU, Inc. v. Bernasconi***, 557 A.2d 1232 (R.I. 1989) as quoted in ***Norman Laurence vs. Russell Sollitto et al.***, 788 A. 2d. 455. "When ruling on a Rule 12(b)(6) motion [to dismiss], the trial justice must look no further than the complaint, assume that all allegations in the complaint are true, and resolve any doubts in the complainant's favor." (Id.) The motion may only be granted if it appears beyond a reasonable doubt that a plaintiff would not be entitled to relief under any conceivable set of facts. (Id.)

The Defendant has clearly not met its burden under the 12(b)(6) minimal standard in showing that the Plaintiff would not be entitled to relief under the facts articulated in her Complaint, or in the alternative, any conceivable set of facts, beyond a reasonable doubt. The Plaintiff has articulated adequate facts justifying the denial of the Defendant's Motion for Dismissal for Failure to State a Claim.

## ARGUMENT

### I. Plaintiff has articulated sufficient facts to support her state law claims.

The Defendant asserts that the Plaintiff has failed to allege any facts to show the existence of a contract between MassMutual and the Plaintiff and, therefore, her breach of contract claim against MassMutual should be denied (**Defendant's Memo**, p. 6) However, the Plaintiff has clearly alleged sufficient facts to establish that MassMutual had a contractual relationship with BCBSRI, to perform certain administrative functions pursuant to the employer's pension plan. These administrative functions, pending discovery, may or may not prove to have been fiduciary in nature (see below). However, based on the aversions in Plaintiff's Complaint, the functions performed by MassMutual clearly had an impact on the Plaintiff, placing her in the position of a third party beneficiary of the contract between MassMutual and BCBSRI. She therefore would have standing to assert a state law claim, attempting to prove that conduct by MassMutual, undertaken pursuant to its contract with BCBSRI, breached her ancillary rights pursuant to that contract. *See gen.* ***Whitehouse v. New England Ecological Development,*** *1999 RI Super.LEXIS 154 (10/28/99); See gen.* ***Mendez v. Brites,*** *849 A.2d 329 (Supreme Court of RI, June 4, 2004; discussing third party beneficiary issues in the context of insurance policies.)* The Summary Plan Description pertinent to the plan at issue is indisputable, on

its face, page 2, that a contractual relationship existed between the Defendants, ultimately impacting on the rights and benefits of the Plaintiff. (Ex. 2) Presumably, discovery will clarify the extent and nature of administrative responsibilities and decision making authority delegated by BCBSRI to MassMutual, and the proper interpretation of the contract between those parties. ***Rodriguez—Abreu v. The Chase Manhattan Bank,*** *986 F.2d 580 (1st Cir. 1977).*

By the same token, sufficient facts have been alleged that MassMutual served as the agent of BCBSRI, and that they worked in concert in terms of the administration of the pertinent benefits plan. Although it is true that the actual misrepresentations in this case emanated from BCBSRI authorities, and not directly from MassMutual, Plaintiff has alleged sufficient facts to permit a reasonable trier of fact to conclude that the relationship between the Defendants was so closely intertwined in terms of the administrative decisions affecting the plan that the Defendants are jointly and severally liable for each other's misdeeds. ERISA itself has been interpreted as containing various provisions that can be read as imposing obligations upon non-fiduciaries. Thus, whether or not MassMutual performed a fiduciary function, it remains a viable defendant for Plaintiff's state law claims. *See gen.* ***Mertens v. Hewitt Associates,*** *508 U.S. 248 (1993).*

**II. It is premature to determine, without benefit of discovery, whether or not Plaintiff's State Law Claims are Preempted by ERISA.**

Defendant avers that Plaintiff's state law claims are pre-empted by ERISA, essentially on the theory that any state claim may "relate to any employee benefit plan..." 29 USC 1144(a). At first blush, under this literal standard, it might appear that any claim by an ERISA plan participant or beneficiary against the plan administrator would of

necessity be considered a claim for enforcement of ERISA rights that could be asserted only as a federal claim under § 502 of the statute, as some courts have implicated. *See e.g.*, ***Hotz v. Blue Cross and Blue Shield of Mass., Inc.***, 292 F.3d 57, 60 (1st Cir. 2002); ***Griggs v. E.I. duPont de Nemours & Co***., 237 F.3d 371 (4th Cir. 2001); ***Hampers v. W.R. Grace & Co***., 202 F.3d 44 (1st Cir. 2000). The Supreme Court has made clear, however, that many "lawsuits… are not preempted, even though these suits obviously affect and involve ERISA plans and their trustees." ***Mackey v. Lanier Collection Agency & Serv., Inc***., 486 U.S. 825, 833 (1988). The simple fact that a defendant is an ERISA plan administrator does not automatically insulate it from state law liability for alleged wrongdoing against a plan participant or beneficiary. *See gen.*, ***Darcangelo v. Verizon Communications, Incorporated; Core, Incorporated***. 292 F.3d 181 (4th Cir. 2002).

It is respectfully urged that the Court should not be overzealous in barring all state claims which even hint of ERISA, under the broad umbrella of preemption, without engaging in the complex case-by-case analysis which the statute and precedent require. Such an analysis is mandated to ensure that valid claims by deserving parties, such as the Plaintiff, are not summarily dismissed with broad strokes by essentially presuming preemption of any claim vaguely connected to an employee benefits plan. *See, gen.* ***Maria v. First Allmerica Financial Life Insurance Company, et al*** *(*and the cases cited therein*),* 379 F. Supp. 2d 20, 51-53 (D. Mass. 2005).

In the instant case, Plaintiff has alleged, in addition to her ERISA claim, state law claims for misrepresentation and breach of contract. She has alleged that this tortuous conduct on the part of the Defendant has caused her damages. In certain instances, such claims have been found to be preempted under ERISA, as in those cases where a

Plaintiff, in order to prevail, must rely on issues bearing on the specific terms of the plan. ***Harris v. Harvard Pilgrim Health Care, Inc.*** 208 F.3d 274, 277 (1st Cir. 2000); ***Carlo v. Reed Rolled Thread Die Co***., 49 F.3d 790, 794 (1st Cir. 1995). In part, Plaintiff contends that, as a result of the Defendant's misrepresentations, she was induced to sign a waiver of any potential claims that, in addition to affecting her rights under the pertinent pension plan, caused her to relinquish any claims for injunctive relief, and claims for lost pay, severance pay, compensatory damages, and punitive damages, including her right to recover damages under a myriad of state and federal statutes and common law theories. (See Ex. 1–Excerpt from General Release.); *See gen.* ***Mouser v. Raytheon Company Pension Plan for Salaried Employees,*** 239 F.3d 51 (1st Cir. 2001) (In this decision, the court generally discusses equitable estoppel remedies in the context of a Defendant's fiduciary responsibilities under ERISA.)

Without the benefit of discovery, it would be premature to determine, under the applicable standard of review, that there exists no set of facts under which the Plaintiff might prove claims that are not preempted because these claims do not merely serve as an attempt on Plaintiff's part to seek an alternative enforcement mechanism to § 502. ERISA does not seek to preempt all state laws that might apply to an ERISA plan administrator, but only those laws that undermine the "nationally uniform administration of employee benefit plans." ***New York State Conference of Blue Cross and Blue Shield Plans, et al. v. Travelers Insurance Company***, et al. 514 U.S. 645, at 657 (1995). Plaintiff was induced to relinquish valuable rights and claims. An assessment of her damages potentially goes beyond the pension plan and its benefits.

If the Plaintiff can prove damages as a result of having been induced by the employer's misrepresentations to accept employment with Perot Systems, and to waive other claims she might have had (for example, claims for wrongful termination, age discrimination, and other claims), she would have standing to pursue her state law claims. Such a claim would not necessarily require the trier of fact to consult the ERISA plan, in order to resolve her claim. Permitting her to pursue such a claim would but undermine the congressional policies that underlie ERISA. ***Custer v. Sweeney***, 89 F3d 1156, at 1167 (4th Cir. 1996). *See also*, ***Carlo v. Reed Rolled Thread Die Co***., 49 F.3d 790, 793-94 (1st Cir. 1995) (***citing Ingersoll-Rand Co. v. McClendon***, 498 U.S. 133, 140 (1990); *see gen.*, ***Harris v. Harvard Pilgrim health care, Inc.,*** 208 F.3d 274 (1st Cir. 2000). Absent discovery, or at least initial mandatory disclosures, it is impossible to say with certainty that the limitations on state law claims established by ERISA are applicable in this case, or that permitting Plaintiff to proceed with her state law claims would risk the establishment of substantive standards applicable to employer conduct at odds with the goal of uniformity that ERISA seeks to implement. ***Ingersoll-Rand v. McClendon***, 112L. Ed. 2d 474, 486 (1990).

**III. Plaintiff has articulated sufficient facts, for purposes of the instant Motion, to establish that the Defendant had a fiduciary duty:**

Generally speaking, an ERISA fiduciary is "any individual who *de facto* performs specified discretionary functions with respect to the management, assets, or administration of a plan. 89 F.3d at 1161 (summarizing ERISA's definition of a fiduciary, 29 USC 1002(21)(A)) ***Sweeney,*** *supra*, at 1161. The Defendant, by definition of the plan description, served in concert with BCBSRI, relative to certain duties, presumably

with all authority attendant thereto. (See Ex. 2—excerpts from the ***Blue Cross and Blue Shield of Rhode Island Retirement Plan, Summary Plan Description,*** *effective January 1, 2003.)*

ERISA §502 gives plan participants and beneficiaries, such as the Plaintiff, the right to sue to force disclosure of certain information, to recover benefits under the plan, to enforce rights of fiduciary requirements under ERISA or the plan, or to clarify rights to future benefits under the plan. 29 USC §§1132(a)(1)-(4); (a)(1)(B). These rights necessarily implicate the necessary scrutiny of the function performed by the Defendant. It is the Plaintiff's good faith belief that MassMutual and BCBSRI acted in concert in terms of the decision making affecting her benefits. Whether or not any of this conduct rose to the level of fiduciary duty, based on the facts of this case, requires a certain measure of discovery. If discovery implicates that there was no such fiduciary duty, Plaintiff would be obligated to withdraw her claim. However, the only "evidence" that currently exists to implicate that a fiduciary duty did not exist stems purely from the Defendant's assertion that it did not—an insufficient basis on which to ground a denial of Plaintiff's Complaint, at this point in time.

If such a duty existed, as will be clarified in discovery, MassMutual had an obligation to discharge its duties with respect to the plan "solely in the interest of the participants and beneficiaries…" 29 USC §1104. Courts have read this section to impose "an unwavering duty on an ERISA trustee to make decisions with single-minded devotion to a plan's participants and beneficiaries …" ***Morse v. Stanley***, 732 F.2d 1139, 1145 (2d Cir. 1884). *See also*, ***Palino v. Casey et al.*** 664 F.2d 854 (1st Cir. 1981) (discussing the

duties imposed by ERISA upon fund trustees to exercise their fiduciary duty with prudence and in the interest of fund participants.)

Plaintiff should not be denied her opportunity to determine and to prove whether or not the Defendant violated the common law based fiduciary obligations that ERISA imposes and, if so, whether or not the conduct of the Defendant was "arbitrary and capricious in light of the [Defendant's] responsibilities to all potential beneficiaries." ***Cleary v. Graphic Communications Int'l Union Supplemental Retirement and Disability Fund,*** 841 F.2d 444, 449 (1st Cir. 1988); ***Firestone Tire and Rubber Co. v. Bruch,*** 489 U.S. 101, 110 (1989.) *See also*, **Mahoney v. Board of Trustees, Boston Shipping Association-International Longshoremen's Association, AFL-CIO Pension Plan**, 973 F.2d 968 (1st Cir. 1992.) As noted above, Plaintiff has the right to determine the extent, if any, to which her rights have been abridged and to clarify the extent of her future benefit entitlement.

## CONCLUSION

Based on the above, it is the position of the Plaintiff, Teresa Curria, that the Defendant intentionally took discriminatory action to her detriment, in breach of its fiduciary duties to her, in violation of ERISA and various state common laws which are not preempted, by the specific facts at issue, by the federal statute. Therefore, under the standard applicable to this Motion, the Plaintiff respectfully urges that the Court deny the Defendant's Motion to Dismiss as to all counts. If it is the Court's decision to grant all or a part of the instant Motion, Plaintiff would ask for a reasonable period in which to seek the permission of the Court to amend her Complaint. Otherwise, it is respectfully urged

that the parties commence discovery, in order to clarify the facts and evidence pertinent to Plaintiff's Complaint.

**REQUEST FOR HEARING**

Plaintiff hereby requests a hearing on this Motion.

Respectfully Submitted,
The Plaintiff Teresa Curria
By her Attorney,

/s/ Stephen T. Fanning
Stephen T. Fanning (#3900)
305 South Main Street
Providence, RI 02903
401-272-8250/ Fax 401-272-4520
stephenfanning@msn.com

CERTIFICATION

I hereby certify that a copy of the foregoing was sent via email to counsel for the Defendant, Stephen M. Prigano and Raymond M. Ripple, Edwards, Angell, Palmer & Dodge, 2800 Financial Plaza, Providence, RI 02903 on this 10th day of January 2007.

/s/ Stephen T. Fanning

EX. 1

# GENERAL RELEASE

Blue Cross & Blue Shield of Rhode Island, a Rhode Island non-profit corporation with its principal place of business at 444 Westminster Street, Providence, Rhode Island 02903, and TERESA CURRIA (hereinafter "you") hereby agree as follows:

In exchange for good and sufficient consideration including but not limited to an offer of employment from Perot Systems, you promise not to sue, and fully and forever release BCBSRI and any of its related corporations, their respective former, present and future agents, directors, officers, employees, representatives, successors and assigns (hereinafter "those associated with BCBSRI") from any and all claims, demands, actions or liabilities, known or unknown, and of whatever kind, that you now have or ever had against BCBSRI or those associated with BCBSRI, including but not limited to those related to your employment with BCBSRI or your termination or separation therefrom. The claims that you are releasing include but are not limited to claims for injunctive relief and claims for lost pay, severance pay, compensatory or punitive damages, and attorneys' fees. Nothing in this release, however, prohibits you from participating in any investigation, hearing or proceeding conducted by the Equal Employment Opportunity Commission ("EEOC"), but you hereby waive any right to recover under or by virtue of such investigation, hearing or proceeding.

You agree that you have executed this release on your own behalf, and also on behalf of any heirs, agents, representatives, successors and assigns that you have at the time you sign this release.

You also agree that this release covers, but is not limited to, any claims arising from the Age Discrimination in Employment Act of 1967, as amended by the Older Workers' Benefit Protection Act (together, "ADEA"), Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, the Americans With Disabilities Act, and any other federal or state or local statute, law, regulation, rule, ordinance or order. You also agree that this release includes claims based on theories of contract or tort, whether based on common law or otherwise, and specifically includes any claims under any severance or other employee benefit plan or guidelines implemented or to be implemented by BCBSRI at any time until the date you sign this release, except as otherwise expressly provided in this release.

This release does not include your vested rights, if any, in the benefits described in the attached letter that provides "an informational summary about your BCBSRI benefits and final pay", all of which survive unaffected by this release.

Except as provided herein, BCBSRI and those associated with BCBSRI have no further obligation to you for any reason whatsoever.

You agree that if you violate this release, you will pay all costs and expenses of defending against any suits incurred by BCBSRI or those associated with BCBSRI, including reasonable attorneys' fees. The provisions of this paragraph do not, however, apply to claims brought under ADEA.

In addition, you acknowledge and agree that:

1. You have been given a period of at least forty-five (45) days within which to consider this release and to review the terms contained herein.

2. You will not divulge the terms of this release except to your immediate family, financial advisor, or legal counsel unless required by subpoena or other legal compulsion.

3. Entry into this agreement is not an admission by BCBSRI of any violation of any federal, state or local statute, law, regulation, rule, ordinance or order. BCBSRI expressly denies any such violation.

4. You warrant that you are fully competent to enter into this release, and you acknowledge that you have been advised that you should review this release with an attorney, that you have read this release, and that you have signed this release freely and voluntarily.

5. In the course of your employment with BCBSRI you have or may have had access to confidential or proprietary business information, including trade secrets, the release of which would cause competitive harm to BCBSRI. You agree that you will not divulge to any person any such information unless expressly required by subpoena or other legal compulsion, nor will you make any statement that is or may be disparaging to BCBSRI or that has the potential of causing direct or indirect harm to BCBSRI's business or good will.

6. You acknowledge that you have received the OWBPA Data Attachment attached hereto as Exhibit A.

7. This release is not effective or enforceable before the later of the last date set forth below or seven days after you sign it. You may revoke this agreement at any time during the seven days after you sign it. To revoke, you must deliver a written notice of revocation to Raymond P. Rainville, Vice President, Human Resources & Administrative Services, Human Resources Department, at BCBSRI. This must be done prior to the conclusion of the seventh day after you sign the release. If BCBSRI does not receive a

written revocation by the end of the seven-day period, this release will become fully enforceable by BCBSRI at that time.

8. This release constitutes the sole and complete understanding between the parties, except that any confidentiality agreement between you and BCBSRI shall remain in effect. This release may not be amended unless in writing signed by both parties, and shall in all respects be construed, enforced and governed by the laws of the State of Rhode Island and any action relating to this release must be instituted in Rhode Island State.

9. In case any part of this release shall be invalid, illegal or otherwise unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

TAC — 5/12/2003

Employee Signature — Date

**Blue Cross & Blue Shield of Rhode Island**

James E. Purcell
Chief Operating Officer & Executive Vice President

April 2, 2003
Date

EX. 2

# BLUE CROSS & BLUE SHIELD OF RHODE ISLAND RETIREMENT PLAN

## SUMMARY PLAN DESCRIPTION

(As Effective January 1, 2003)

## THE PLAN SPONSOR

Blue Cross & Blue Shield of Rhode Island is the sponsor of the Plan. Its address is 444 Westminster Street, Providence, Rhode Island 02903-3279. You can call Blue Cross & Blue Shield at (401) 459-1000. Its employer identification number, assigned by the Internal Revenue Service, is 05-0158952.

## OTHER EMPLOYERS

Your Plan allows other employers to adopt its provisions. You and your beneficiaries may examine or obtain a complete list of employers, if any, who have adopted the Plan by making a written request to the Administration. Another Employer who has adopted the provisions of the Plan is:

Coordinated Health Partners, Inc.
15 LaSalle Square
Providence, Rhode Island 02903
05-0413436

## PLAN ADMINISTRATION

The Board of Directors of the Corporation, has appointed the Financial Affairs & Audit Committee and the Executive Committee (collectively referred as the "Committee"), which are responsible for administering the Plan. The Committee will establish rules and regulations for the administration of the Plan and the decisions of the Committee regarding any questions involving the Plan will be conclusive to the extent allowed by applicable law.

Enrollment, record keeping, benefit calculations and other administrative functions for the Plan are provided by Massachusetts Life Insurance Company ("Mass Mutual"). You can contact Mass Mutual by calling 1-800-743-5274.

## SERVICE OF PROCESS

The agent for service of legal process is the Committee or the General Counsel to the Corporation, Judith A. Sullivan, Esq., 444 Westminster Street, Providence, Rhode Island 02903-3279.

## FINANCIAL INFORMATION

All of the Plan's records, administrative and financial, are all maintained on a Plan Year basis beginning on January 1 and ending on December 31. The Corporation makes contributions to the Plan based on the actuarial valuations of our consulting actuaries, The Watson Wyatt Company, 80 William Street, Wellesley Hills, MA 02181.

## FUNDING

Mass Mutual, Springfield, Massachusetts, holds the Plan's assets and is the Trustee.